IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| MICHAEL JAMES WALTON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 5:23-CV-355 (CAR) |
| | : | |
| HONORABLE FRANK KENDALL, | : | |
| Secretary of the Air Force, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS COMPLAINT

Plaintiff Michael James Walton, proceeding *pro se*, filed an employment discrimination and retaliation suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and the Rehabilitation Act, 29 U.S.C. § 701 et seq., against Defendant Frank Kendall, in his official capacity as Secretary of the Air Force (the "Agency"), asserting he was discriminated against based on his race, age, and disability; retaliated against; and subjected to a hostile work environment during his civil employment with United States Air Force at Robins Air Force Base. Plaintiff also alleges claims under Uniformed Services Employment and Reemployment Act of 1994 (the "USERRA"), 38 U.S.C. § 4301 *et seq.*[1] Before the Court is the Agency's Motion to Dismiss

---

[1] Although Plaintiff's Complaint also alleges various errors during the EEOC administrative process, Plaintiff clarified in his Response to the Agency's Motion to Dismiss that he is not bringing any claims against the EEOC. [Doc. 24, p. 7].

Plaintiff's Complaint. Having considered the Motion, the pleadings, and the applicable law, the Agency's Motion to Dismiss [Doc. 19] is **GRANTED.** Plaintiff's claims under the USERRA are hereby **DISMISSED**, as this Court lacks jurisdiction to consider them. Because the Eleventh Circuit requires district courts to allow a plaintiff proceeding *pro* se an opportunity to amend his complaint unless it is clear that he can prove no facts in support of his claim that would entitle him to relief,[2] **Plaintiff is HEREBY PERMITTED** to file an amended complaint as to his race, age, and disability discrimination, hostile work environment, and retaliation claims within **twenty-one (21) days of the date of this Order**. Failure to timely file an amended complaint will result in dismissal of this action for the reasons stated herein.

## LEGAL STANDARD

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.[3] To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4]  A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5]  The plausibility standard requires that a plaintiff

---

[2] *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291-92 (11th Cir. 2018).

[3] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] *Id.*

allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[6]

When determining the adequacy of the allegations in the Complaint, the Court remains mindful that "*[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."[7]  Nevertheless, "[e]ven with *pro se* litigants, 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.'"[8]

## BACKGROUND

Plaintiff, an African American male, over the age of 40, and an "over 30% disabled veteran,"[9] alleges the following facts in his Complaint and the attachments thereto, which are assumed to be true for the purposes of this Order.[10] In November 2015, Plaintiff began civilian employment with the United States Air Force at Robins Air Force Base ("RAFB") as a Sheet Metal Mechanic in the Wing Repair Shop, 573 Commodities Maintenance Squadron, and he remained in that position when the events underlying this action arose.[11]

Plaintiff alleges that as a Sheet Metal Mechanic, he "primarily functioned as a

---

[6] *Bell Atlantic Corp.*, 550 U.S. at 556.

[7] *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

[8] *United States v. Korman*, No. 07-80998-Civ., 2008 WL 5662165, at *3 (S.D. Fla. Nov. 5, 2008) (quoting *Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1246 (11th Cir. 2005)).

[9] Compl., ¶ 5 [Doc. 1].

[10] *See Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011).

[11] Compl., ¶5; EEOC's Order of Final Judgment, p. 2 [Doc. 19-2].

Robot Operator in the F-15 Wing Shop,"[12] but Plaintiff acknowledges in his Complaint that he used "riveting jack hamming tools on the job"; Plaintiff admitted that they "used the rivet guns all day for weeks and months at a time";[13] the work "required extreme heavy work";[14] and he was not able "to perform the essential functions of the Sheet Metal Mechanic job without an accommodation" after he suffered work-related injuries in 2017 and 2018.[15]

In 2017, Plaintiff injured his right knee, which limited his ability to squat, and in 2018, he injured his hand while "handling vibrating tools as part of his daily tasks," which limited the use of his hands.[16] After Plaintiff's knee injury in 2017, Plaintiff, as an Aircraft Sheet Metal Mechanic, began working in his department "with some limitations."[17] Plaintiff had carpel tunnel release surgery on his right hand in March 2019, had meniscus repair surgery on his right knee in May 2019, and carpel tunnel release surgery on his left hand in September 2019.[18]

In July 2019, before his surgery in September, Plaintiff was sent "by the

---

[12] Compl., ¶ 5.

[13] Response to Motion to Dismiss, p. 2 [Doc. 24].

[14] *Id*. at p. 4.

[15] Compl. ¶¶ 7, 8. In the EEOC's Order of Final Judgment, the ALJ found that "[t]he work is physically demanding since the mechanics are the ones who make sure that large and small pieces of unwieldy sheet metal are made to fit on large aircraft." The ALJ also found that Plaintiff "was one of about six Sheet Metal Mechanics who concentrated on removing screws and other fasteners from the airplane wings. The use of robots heavily automated the process while still leaving an hour or more of manual labor on a good day. However, not every day was a good day and, when the robot broke down, the sheet metal mechanics had to remove the fasteners using hand-operated power tools." [Doc. 19-1, pp. 2-3].

[16] Compl., ¶¶ 7, 8; Functional Capacity Evaluation, Doc. 1-2, p. 2.

[17] Functional Capacity Evaluation, Doc. 1-2, p. 2.

[18] Compl. ¶¶ 9, 10, & 13.

Engineering Department" to Alabama to "evaluate the new replacement Robot being built in Alabama due to his extensive robot knowledge and experience" for use in his department.[19] Apparently, in "August of 2019 the Agency removed the robots that were in operation from the shop because it had decided to replace them with a new robot."[20] In November 2019, a replacement robot arrived at RAFB, and Plaintiff, together with seven other robot operators in the department, began initial training on how to use it.[21]

On January 27, 2020, Plaintiff underwent a functional capacity evaluation ("FCE") at the Blankenship Center in Macon, Georgia.[22] The evaluation found that Plaintiff "demonstrated the ability to work now at only a SEDENTARY LIGHT Level on the most common material handling tasks[,]" and "based on [his] Upper and Lower Extremity dysfunction, a primary sitting job with less stress and less repetitive Hand work is more suitable for him at this time."[23] The FCE noted that Plaintiff had "been working with some limitations since his 10-5-17 Right Knee Injury, and based on his current FCE results, he should continue to work with [the following] limitations[:]

- Maximum Lifting/Carrying Weight of 20 lbs.
- No Squatting
- No Kneeling
- No Crawling
- No Stair or Ladder Climbing

---

[19] Compl. ¶ 12.

[20] EEOC Final Decision [Doc. 19-1, p. 3].

[21] Compl., ¶14.

[22] FCE letter from Dr. Barnes [Doc. 1-3, p. 2].

[23] *Id.*

- No Walking on Uneven Ground
- Alternate Between Standing/Walking and Sitting Every 60 min.
- Limited Vibrating Hand Tool Use, No More than 5 min Continuously and 1 Hor Total a Day
- No Highly Repetitive Hand/Wrist Activities, No More than 30 min Continuously and 3 Hours Total a Day
- No Forceful Repetitive Hand/Wrist Activities, No More than 30 min Continuously and 3 Hours Total a Day."[24]

On February 11, 2020, Plaintiff states he attended a meeting wherein all employees were informed "that there [were] jobs now available for injured workers that would be filled by currently disabled employees before they would offer any to outside hiring."[25]

The next day, two weeks after Plaintiff's FCE, on February 12, 2020, Plaintiff's first line supervisor, Justin Upshaw, "called [Plaintiff] to his office and told plaintiff that he is now being given a new job due to his on the job injuries and this new job had the possibilities of promotions[.]"[26] Upshaw offered Plaintiff the "temporary, light-duty" position of Security Escort, "the duties of which conform[ed] to the physical limitations established by the treating physician for [Plaintiff's] on-the-job injur[ies] which occurred on 10/05/2017 & 07/12/2018."[27] In the Security Escort position, Plaintiff would remain at the pay level of WG-3806-10 Sheet Metal Mechanic.[28]

Plaintiff then met with Dejuan Scott, the temporary duty supervisor for the

---

[24] *Id.*

[25] Compl., ¶ 15.

[26] Compl., ¶ 16.

[27] Feb. 20, 2020 letter from Headquarter Air Force Personnel Center, Subject: Temporary Light-Duty Assignment for Michael J. Walton [Doc. 1-5, p. 8].

[28] *Id.*

Security Escort position. Mr. Scott informed Plaintiff "that the job would require Plaintiff to walk 7 hours a day escorting cleaning crews[;]" Plaintiff responded "that the job was outside of his standing and walking restrictions[;]" and "Scott said that he understood and rescinded the job offer."[29] Although Plaintiff stated the job was outside his standing and walking restrictions, the job offer from Headquarters Air Force Personnel Center outlined the functional requirements of the Security Escort position, acknowledged that "[t]he work involves a considerable amount of walking and sitting for escorting purposes[,]" but determined "[t]he physical requirements of the position will not exceed the work restrictions by OWCP-5c dated 9/12/19 and doctor notes dated 12/16/19 and 6/10/19."[30]

Plaintiff went back to Upshaw, his sheet metal mechanic first line supervisor, "informed him the [security escort] job was outside of [Plaintiff's] restrictions of standing walking" and "asked why did he say that the job was a promotion?"[31] Plaintiff alleges Upshaw said, "if you don't take this job you are going to get something worse[,]" and "Plaintiff felt threatened."[32]

Later in the day on February 12, 2020, Plaintiff met with Flight Chief James

---

[29] Compl., ¶ 17.

[30] February 20, 2020 letter from Headquarters Air Force Personnel Center, Subject: Temporary Light-Duty Assignment for Michael J. Walton [Doc. 1-5, p. 9].

[31] Compl., ¶ 18.

[32] *Id.*

Harrison; Upshaw was also present at this meeting.[33] Flight Chief Harrison informed

Plaintiff that he was being offered the Security Escort position because of his limitations.[34]

Plaintiff asked why he was not being offered any other positions "being offered to people

with limitations as mentioned in the mass training meeting" the day before, on February

11, 2020.[35] Harrison told Plaintiff he "didn't know about any other jobs like that."[36]

Plaintiff told Harrison that he believed he was able to continue working as a sheet metal

mechanic and believed "the robot operators job is turning into a wg 11 job status[;] these

robots will be implemented throughout the base[;] when it does, the robot operators job

will be well within my limitations[;] and if you decide to move me, I would like to be

considered for one of those jobs."[37] As a sheet metal mechanic, Plaintiff was at the level

WG-10.[38] Plaintiff believed the Agency would create a new robot operator position, and it

would be a higher WG-11 position.[39] Harrison told Plaintiff he "didn't know anything

about wg 11 positions coming available [or] the new robot job openings that may be

available."[40] Harrison told Plaintiff "just because [you are] on the robot now, it doesn't

mean that [you] will be a robot operator when the new robot starts production.

[Harrison] said for [Plaintiff] to be considered for the new robot position, [Plaintiff] will

---

[33] Compl., ¶ 19.

[34] February 19, 2020 emails from Melinda Crowe, Injury Compensation Office [Doc. 1-8, p. 3].

[35] *Id.*

[36] *Id.*

[37] February 20, 2020 Letter from Plaintiff to Harrison and Upshaw [Doc. 1-8, p. 3].

[38] February 19, 2020 emails from Melinda Crowe, Injury Compensation Office [Doc. 1-5, p. 3].

[39] February 20, 2020 Letter from Plaintiff to Harrison and Upshaw [Doc. 1-8, p. 3].

[40] *Id.*

have to submit a resume."[41] Plaintiff expressed his desire to continue training on the new robots and his concern that he would "miss out on [ ] vital training" if he accepted the Security Escort position, a position Plaintiff called a "restroom monitor."[42] Plaintiff wrote to Harrison, "it is imperative that I contribute my skills to the sustainment of the war fighter, instead of wasting them as the restroom monitor."[43] At the end of their conversation, Plaintiff states Harrison told Plaintiff, "if [you] do not take the restroom monitors job, [I] don't know what will happen to [you]."[44] Plaintiff states he felt threatened that he would lose his job if he did not comply,[45] but Plaintiff did not accept the Security Escort position.

Later on February 12, 2020, Plaintiff contacted the Civilian Equal Employment Opportunity ("EEO") office to set up an appointment to file a claim of discrimination.[46] On February 25, 2020, Plaintiff was offered the Security Escort position a second time, but he again declined the offer. Thus, Plaintiff "was provided temporary accommodations to work in a unique area [within the sheet metal squadron] where he would monitor the machine process of calibrating aircraft parts.[47] This "temporary accommodation was not

---

[41] *Id.*

[42] *Id.* at pp. 3-4.

[43] *Id.* at p. 4.

[44] *Id.* at pp. 3-4.

[45] *Id.* at p. 4.

[46] Compl., ¶ 20

[47] May 20, 2020 statement to EEO Claims for Michael J. Walton from Melinda Crowe [Doc. 1-5, p. 14].

documented as a job offer[;]"[48] it was Plaintiff's "temp job within the sheet metal squadron until a job c[ould] be found."[49]

From February 2020 through July 2020, Plaintiff broadly claims Flight Chief Harrison "showed favoritism to white coworkers in regards to attendance and training,"[50] but he alleges no further facts. In July 2020, Plaintiff was out on leave because of heart surgery and received a letter that he needed to turn in his FMLA paperwork by July 31, 2020, or face termination; thus, he had to carry the paperwork to the office.[51]

In September 2020, Plaintiff was scheduled to attend formal training for certification to operate the new robots. He was not allowed to attend the training but alleges "other white coworkers had already attended training classes."[52]

In October 2021, Plaintiff was on temporary total disability leave while recovering from a knee replacement when he received a letter that he needed to show he was fully vaccinated against COVID by November 22, 2021, or face termination. Plaintiff alleges management spread false rumors that he was not fully vaccinated, when in fact he was.[53]

Plaintiff attached an article reporting on the Installation Disability Program or Schedule A Program at RAFB "that assists people with disabilities outside of Robins, as well as current base employees with disabilities, by helping them narrow down positions

---

[48] *Id.*

[49] April 13, 2020 Memo from Melinda Crowe [Doc. 1-5, p. 13].

[50] Compl., ¶ 20.

[51] *Id.* at ¶ 30.

[52] *Id.* at ¶ 32.

[53] *Id.* at ¶ 44.

they may qualify for, review their resume, and help them with other supporting documents to apply for jobs at the base[.]"[54] "The program also helps employees with disabilities with reasonable accommodations in the workplace."[55] Plaintiff alleges he was never offered a position under this program.

On February 14, 2022, Plaintiff accepted a workplace accommodation as a Supply Clerk "under duress."[56] In his February 14, 2022 work assignment acceptance letter, Plaintiff explained that his duress stemmed from the fact he was still under the management of Flight Chief Harrison in the new assignment. Plaintiff alleges as a Supply Clerk, he "was told to sit at a desk with essential no duties"; as a result, he felt isolated and humiliated.[57] As of the date Plaintiff filed his Complaint in this case, he was still employed at RAFB.

On June 9, 2020, Petitioner filed a charge of discrimination with the Agency's EEO claiming his management discriminated against and harassed him because of his race, age, and disability based on the facts outlined above.[58] Following investigation, Plaintiff requested a hearing before the EEOC, and the matter proceeded to a hearing before an Administrative Judge ("ALJ") on March 20, 2022.[59] Following the hearing, the ALJ issued

---

[54] October 1, 2021 News Article [Doc. 1-6, p. 2].

[55] *Id.* at p. 3.

[56] February 22, 2022 letter from Plaintiff [Doc. 1-10, p. 2]; Compl., p. 6, ¶ 20.

[57] Compl., ¶ 46.

[58] EEO Complaint [Doc. 19-2].

[59] EEOC Order of Final Judgment [Doc. 19-1, p. 2].

a final order on April 28, 2023, denying all of Plaintiff's claims. [60] After a review of the record, the Agency issued its Final Order on June 29, 2023, which fully implemented the ALJ's decision denying Plaintiff's claims and provided Plaintiff with a Notice of Right to Appeal and Notice of Right to File Civil Action.[61]

Plaintiff elected to file this civil action, asserting discrimination claims for age, race, and disability; hostile work environment claims; retaliation claims; and violations of the Uniformed Services Employment and Reemployment Rights Act (the "USERRA"). The Agency now moves to dismiss Plaintiff's claims.

## DISCUSSION

Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[62] Rule 10(b) further provides that the claims in a complaint must be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances."[63] In addition to these procedural requirements, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[64] A claim is "facially plausible" when it is supported with facts that "allow [ ] the court to draw the reasonable inference that the defendant is

---

[60] *Id*. at p. 10.

[61] Final Order of Agency [Doc. 19-5].

[62] Fed. R. Civ. P. 8(a)(2).

[63] Fed. R. Civ. P. 10(b).

[64] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

liable for the misconduct alleged."[65] "Although courts must make reasonable inferences in Plaintiffs' favor at the pleading stage, we are not required to draw every inference that the plaintiff suggests."[66] While Plaintiff is not required to specifically plead these requirements in his complaint, he must "provide enough factual matter (taken as true) to suggest intentional race discrimination."[67]

*Pro se* pleading must be construed liberally, and the allegations of a *pro se* complaint "to less stringent standards than formal pleading drafted by lawyers."[68] But "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action."[69] And "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."[70] "Thus, at a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory."[71]

## ANALYSIS

### I.  USERRA Claims

---

[65] *Id.*

[66] *Powers v. Secretary, U.S. Homeland Security*, 846 F. App'x 754, 757 (11th Cir. 2021) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

[67] *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir. 2008).

[68] *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014).

[69] *Id.* at 1168-69.

[70] *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

[71] *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 684 (11th Cir. 2001).

Despite Plaintiff's contentions to the contrary, it is clear this Court lacks jurisdiction over any claim under the USERRA. The USERRA was enacted to prohibit employers, including Federal executive agencies, from discriminating against employees on the basis of their military status.[72] When a plaintiff commences an action under USERRA, "Section 4324 does not authorize a private action against the Federal Government, as an employer, in federal district court; rather it confers jurisdiction upon the Merit Systems Protection Board. . . . The MSPB is authorized to determine whether a Federal executive has complied with USERRA and, if necessary, to compel that agency's compliance with the statute. . . . Decisions of the MSPB are subject to review in the Court of Appeals for the Federal Circuit."[73] Thus, because this Court lacks jurisdiction over any USERRA claim, Plaintiff's USERRA claims are hereby **DISMISSED with prejudice**.

## II.  Race, Age, and Disability Discrimination

Plaintiff contends the Agency discriminated against him based on his race and age and denied him reasonable accommodations for his disability by only offering the security escort position, a job that was outside his doctor's standing and walking restrictions.

### A.  Title VII Race Discrimination

Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

---

[72] *See* 38 U.S.C. § 4303(5)(A)(v).

[73] *Dew v. United States*, 192 F.3d 366, 372 (2nd Cir. 1999).

employment, because of such individual's race, color, religion, sex or national origin."[74] Title VII protects federal employees.[75] To prevail on a Title VII claim for discrimination based on disparate treatment, a plaintiff must ultimately prove that the defendant acted with discriminatory intent.[76] Discriminatory intent may be established either by direct evidence or by circumstantial evidence meeting the test set out for Title VII cases in *McDonnell Douglas Corp. v. Green*.[77] But a plaintiff asserting a claim of employment discrimination under Title VII is not required to allege facts in a complaint that would be sufficient to demonstrate a "prima facie case" or "pretext" or any other facts relevant to the *McDonnell Douglas* burden-shifting framework in order to defeat a motion to dismiss or a motion for judgment on the pleadings.[78]

Thus, to assert a viable Title VII claim, a plaintiff must allege facts that are "sufficient to create an inference of discrimination."[79] Although a plaintiff claiming disparate treatment is not limited to any particular formula, a common way of alleging discrimination on the basis of a protected characteristic is to establish the following

---

[74] 42 U.S.C. § 2000e-2(a)(1).

[75] 42 U.S.C. § 2000e-16(a) ("All personnel actions affecting employees or applicants for employment [in military departments and federal agencies] shall be made free from any discrimination based on race, color, religion, sex, or national origin.").

[76] *See, e.g., Hawkins v. Ceco Corp.*, 883 F.2d 977, 980-81 (11th Cir. 1989).

[77] 411 U.S. 792 (1973); *see Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019).

[78] *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002) (the *McDonnell Douglas* framework is an "evidentiary standard, not a pleading requirement," and a plaintiff is not required to plead every element of a *prima facie* case to survive a motion to dismiss).

[79] *Hopkins v. Saint Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2010) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (quotation marks omitted).

elements of a *prima facie* case under Title VII: he is a member of a protected class, such as persons of a particular race or sex; he suffered an adverse employment action; and he was treated less favorably by his employer than one or more similarly situated individuals outside his protected class of race or sex.[80] And following the Supreme Court's decision in *Babb v. Wilkie*,[81] which interpreted the parallel federal sector provision of the ADEA, the Eleventh Circuit has "recognized that a plaintiff no longer need show that his protected activity or status was the but-for cause of the adverse action to state a claim under § 2000e-16."[82] "Rather, a plaintiff's claim survives if 'discrimination play[ed] *any part* in the way a decision [was] made.' The relevant question is whether the protected characteristic was the 'but-for cause of *differential treatment,*' not whether it was the 'but-for cause of *the ultimate decision.*'"[83]

The Court finds Plaintiff has failed to sufficiently raise allegations to state a race discrimination claim under Title VII. The only allegations from which race discrimination can be inferred from Plaintiff's Complaint are his allegations that from February 2020 through July 2020, Flight Chief Harrison "showed favoritism to white coworkers in regards to attendance and training,"[84]  and in September 2020, Plaintiff was not allowed to attend formal training to operate the new robots but "other white coworkers had

---

[80] *See Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

[81] 589 U.S. 399 (2020).

[82] *Durr v. Sec'y, Dep't of Veterans Affairs*, 843 F. App'x 246, 247 (11th Cir. 2021) (per curiam) (citing *Babb v. Sec'y, Dep't of Veterans Affairs*, 992 F.3d 1193, 1205 (11th Cir. 2021)).

[83] *Id.* (emphasis in original) (quoting *Babb v. Wilkie*, 589 U.S. at 408).

[84] Compl., ¶ 20.

already attended training classes."[85] But these conclusory allegations are insufficient to plausibly suggest that Plaintiff suffered any adverse employment action based on discriminatory intent.

In his Response, Plaintiff contends "management provided reasonable accommodations for my white co-workers when they needed it but did not provide reasonable accommodations for me."[86] Plaintiff names Travis Marshall and Aaron Mourning as similarly situated white employees who received more favorable treatment. Plaintiff states he and Travis Marshall were hired the same day, both veterans, and were assigned to the same robot on the same day.[87] Plaintiff states that when Marshall was unable to perform his duties, "management gave him a reasonable accommodation that he could do,"[88] and Aaron Mourning, unlike Plaintiff, was placed in the Priority Placement Program.[89] Plaintiff also contends his supervisor "used his authority to show favoritism to white employees when he made the selection for training."

But Plaintiff did not allege these allegations in his Complaint. It is well-established that a "complaint may not be amended by briefs in opposition to a motion to dismiss."[90] Indeed, the Court "cannot act as de facto counsel or rewrite an otherwise deficient

---

[85] *Id.* at ¶ 32.

[86] Plaintiff Response Brief [Doc. 24, p. 3].

[87] *Id.* at p. 9.

[88] *Id.*

[89] *Id.* at p. 10.

[90] *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1381 (S.D. Ga. 2015) (collecting cases).

pleading to sustain an action."[91] In his Complaint, Plaintiff fails to sufficiently allege race discrimination played any part in any adverse employment action. Plaintiff may include these allegations for consideration if he files an amended complaint.

**B.  ADEA Age Discrimination**

The ADEA prohibits employers from discriminating against employees who are at least 40 years old on the basis of age.[92] As previously noted, "[a]lthough a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination under the *McDonnell Douglas* framework,"[93] "a complaint that 'provides no … detail manifesting any form of [discriminatory] animus, discriminatory words, prior incidents or other indications that [Plaintiff's protected class] played a role in [the employer's] decision …' is insufficient to satisfy the minimum pleading standards of Rule 8(a)(2)."[94]

Again, Plaintiff has wholly failed to provide any factual basis tending to show his age was the reason for any alleged adverse action. Plaintiff alleges only that he over the age of 40; he was denied reasonable accommodations due to his age; and "[b]y not restructuring Plaintiff's work conditions, the Defendant wasted vital time in respect to

---

[91] *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020).

[92] *See* 29 U.S.C. §§ 623(a)(1), 631(a).

[93] *Jacobs v. Biando*, Case No. 1:12-cv-4437-WSD, 2013 WL 3243625, at *7 (N.D. Ga. June 26, 2013) (citations and internal marks omitted), *aff'd*, 592 F. App'x 838 (11th Cir. 2014) (per curiam).

[94] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).

[Plaintiff's] age."[95] Plaintiff provides no detail manifesting any form of discriminatory animus based on his age; he does not allege the Agency offered a younger employee a position or training opportunity or identify any other facts from the Court can plausibly infer age discrimination. Thus, Plaintiff fails to state an age discrimination claim.

## C. <u>Rehabilitation Act – Failure to Accommodate</u>

The Rehabilitation Act is "a federal employee's exclusive remedy for disability-related employment discrimination."[96] The Rehabilitation Act prohibits federal agencies from discriminating in employment against "otherwise qualified" individuals with a disability,[97] and the "standard for determining liability under the Rehabilitation Act is the same as that under the [ADA]."[98] A plaintiff establishes a *prima facie* case of disability discrimination under the Rehabilitation Act by showing (1) he has a disability, (2) he is a "qualified individual," meaning he can perform the "essential functions" of his job without accommodation or, failing that, with a reasonable accommodation, and (3) his employer discriminated against him because of his disability or perceived disability.[99] A plaintiff may satisfy the third prong of a *prima facie* case of disability discrimination by showing either that his employer failed to provide a reasonable accommodation for his

---

[95] Compl., p. 19, ¶d.

[96] *Tarmas v. Mabus*, Case No. 3:07-cv-290-J-32TEM, 2010 WL 3746636, at *3 (M.D. Fla. Sept. 21, 2010), *aff'd sub nom. Tarmas v. Sec'y of Navy*, 433 F. App'x 754 (11th Cir. 2011).

[97] 29 U.S.C. § 794(a); *see also Boone v. Rumsefeld*, 172 F. App'x268, 270 (11th Cir. 2006).

[98] *Owens v. Sec'y, Fla. Dept. of Corrections*, 602 F. App'x 475, 477 (11th Cir. 2015) (citing *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

[99] *See Marshall v. Dep's of Housing and Urban Dev.*, Case No. 1:19-cv-0460-JPB-JSA, 2020 WL 13660301, *5 (N.D. Ga. April 3, 2020) (citing *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014)).

disability or that his employer subjected him to an adverse employment action, such as discharge, because of his disability.[100]

"Discrimination against a disabled employee includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is … an  employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship of the operation of [its] business.'"[101] "'Thus, an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the [Act] so long as that individual is "otherwise qualified," and unless the employer can show undue hardship.'"[102]

"To state a claim for failure to accommodate under the Rehabilitation Act, the plaintiff must allege that: (1) []he is disabled; (2) []he was a 'qualified individual' at the relevant time, meaning []he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) []he was discriminated against by the defendant's failure to provide a reasonable accommodation."[103] "An accommodation is reasonable if it enables the employee to perform the essential functions of the job."[104] "A 'reasonable accommodation' may include job restructuring; modified work schedules;

---

[100] *Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017).

[101] *Bender v. Secretary, Dep't of Defense*, 2022 WL 3703805, *3 (11th Cir. Aug. 26, 2022) (quoting 42 U.S.C. § 12112(b)(5)(A)).

[102] *Id.* (quoting *Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247, 1262 (11th Cir. 2007) (quoting 42 U.S.C. § 12112(b)(5)(A))).

[103] *Id.* (quoting *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001)).

[104] *Id.* (citation omitted).

reassignment to a vacant position; acquisition or modification of equipment; appropriate adjustment or modifications of examinations, training materials, or policies; and other similar accommodations for individuals with disabilities."[105]

Here, Plaintiff fails to plausibly allege he was denied a reasonable accommodation. On the contrary, Plaintiff's Complaint and attachments thereto show that the Agency offered Plaintiff a temporary, light-duty position of Security Escort that, according to the Agency, conformed to his limitations.[106] Plaintiff disagreed and declined the offer. Thus, the Agency provided him with a temporary job to "work in a unique area [within the sheet metal squadron] where he would monitor the machine process of calibrating aircraft parts."[107] Thereafter, Plaintiff accepted the job offer of supply clerk. The fact Plaintiff accepted the offer of the Supply Clerk position "under duress" because he wanted a different manager is of no consequence; the Eleventh Circuit has established that an employer is not required to transfer an employee to a new supervisor to comply with the Rehabilitation Act.[108]

"The burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of

---

[105] *Id.* (citing 42 U.S.C. § 12111(9)).
[106] February 20, 2020 letter from Headquarters Air Force Personnel Center, Subject: Temporary Light-Duty Assignment for Michael J. Walton [Doc. 1-5, p. 8].
[107] May 20, 2020 Statement to EEO Claims for Michael J. Walton from Melinda Crowe [Doc. 1-5, p. 14].
[108] *D'Onoforio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1024 (11th Cir. 2020).

persuasion to demonstrate that such an accommodation is reasonable."[109] Plaintiff's only proposed accommodation is a transfer to a WG-11 robot operator position that Plaintiff believed was going to be available at some point in the future. But such an accommodation would be unreasonable as a matter of law because it was a promotion to a higher level, and it was not an existing position. "The Rehabilitation Act does not [ ] require an employer to accommodate an employee in any manner in which that employee desires nor to create a position for the disabled employee."[110]

Plaintiff's allegations that he was not considered for one of the "injured workers" positions discussed at the February 11, 2020 employee meeting or that he should have received a job through the Agency's Installation Disability Program or Schedule A Program does not show the denial of a reasonable accommodation. Plaintiff does not plead that any purported job through these programs would be within his specific work conditions or that he was qualified for any such position. Moreover, an employer is not required to accommodate an employee in the manner the employee desires.[111]

---

[109] *Dalton v. CDC*, 602 F. App'x 749, 754-55 (11th Cir. 2015); *see also Everett v. Grady Mem. Hosp. Corp.*, 703 F. App'x 938, 945 (11th Cir. 2007) ("It is [the plaintiff's] burden to identify an accommodation and demonstrate that it is reasonable, meaning that the accommodation would allow her to perform the job's essential functions.").

[110] *Thatcher v. Dep't of Veterans Affs.*, 2021 WL 4940824, at *14 (11th Cir. Oct. 22, 2021) (citing *Curry v. Sec'y Dep't of Veterans Affairs*, 518 F. App'x 957, 964-65 (11th Cir. 2013) (citations and quotations omitted)).

[111] *Id.* ("[T]here are limits to the accommodations an employer must provide. The key is 'reasonability.'"). Moreover, the article discussing the Agency's Installation Disability Program explains that "Schedule A is a hiring authority, and it does not guarantee that a person with a disability will be hired based solely on the individual's Schedule A status." Doc. 1-6, p. 2.

Finally, to the extent Plaintiff alleges he was denied training as a failure to accommodate, Plaintiff alleges that the desired robot training was scheduled for September 2020, and the training was related to the job of Sheet Metal Mechanic. But the Sheet Metal Mechanic position was outside of Plaintiff's work restrictions pursuant to his January 2020 FCE. Thus, Plaintiff has failed to allege how the robot training was related to his job responsibilities in September 2020.

## III. Hostile Work Environment

To state a hostile work environment claim under Title VII, the ADEA, or the Rehabilitation Act, a plaintiff must show: "(1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability."[112] For a hostile work environment claim to be actionable, the environment must be one that both a reasonable person would find hostile, and that the victim subjectively perceived to be hostile.[113]

Plaintiff appears to allege the Agency created a hostile work environment as evidenced by the following incidents: (1) Upshaw's statement that if Plaintiff did not

---

[112] *Nurse v. City of Alpharetta*, 775 F. App'x 603, 607 (11th Cir. 2019) (quoting *Edwards v. Prime, Inc.*, 602 f.3d 1276, 1300 (11th Cir. 2010)); *see also Litman v. Sec'y of the Navy*, 703 F. App'x 766, 771 (11th Cir. 2017).
[113] *See, e.g., Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002).

accept the Security Escort job offer, he "was going to get something worse";[114] (2) Harrison's statement that if Plaintiff did not take the Security Escort job "I don't know what is going to happen to you";[115] (3) the second offer for the Security Escort position, which Plaintiff characterizes as an attempt "to set [Plaintiff] up for termination";[116] (4) the "Malicious Gossip defamatory language" that Plaintiff stated the Security Escort job was "beneath" him;[117] (5) directing Plaintiff to turn in FMLA paperwork in July 2020 or "face immediate termination";[118] (6) communication in October 2021 that Plaintiff would need to show proof of COVID vaccination or "face termination";[119] and (7)  a meeting with Harrison and Union representatives on December 23, 2021 concerning Plaintiff's vaccination status which "did harm by threatening Plaintiff's work status, self confidence and ability to perform."[120]

Plaintiff's allegations fail to objectively state any harassment severe or pervasive enough to create a hostile or abusive working environment. To evaluate the objective severity of the harassment, courts must look at the totality of the circumstances including "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the

---

[114] Compl., ¶ 18,
[115] *Id.* at ¶ 19.
[116] *Id.* at ¶ 23.
[117] *Id.* at ¶ 29.
[118] *Id.* at ¶ 30.
[119] *Id.* at ¶ 41
[120] *Id.* at ¶ 42.

conduct unreasonably interferes with the employee's job performance."[121] The alleged harassing conduct Plaintiff alleges was not physically threatening or humiliating; it was neither frequent nor severe; and there is no allegation it unreasonably interfered with Plaintiff's job performance. Indeed, there is no allegation showing how any of the described events are based on his age, race, or disability.

## IV. Retaliation

Title VII, the ADEA, and the Rehabilitation Act's anti-retaliation provisions are assessed under the same framework. "To make out a prima facie case of retaliation, the plaintiff must show that (1) []he engaged in statutorily protected activity; (2) []he suffered a materially adverse action; and (3) there was a causal connection between the two events."[122] "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated."[123] "[A] close temporal proximity between the decision-maker's acquisition of that knowledge and an adverse employment action will generally be enough to create a factual issue on the causation element. But where … there is no other evidence tending to show causation, the temporal proximity must be 'very close.'"[124]

---

[121] *Mosley v. MeriStar Mgmt. Co., LLC*, 137 F. App'x 248, 252 (11th Cir. 2005).

[122] *Gooden v. Internal Revenue Serv.*, 679 F. App'x 958, 967 (11th Cir. 2017).

[123] *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (citations omitted).

[124] *Singleton v. Pub. Health Tr. of Miam-Dade Cty.*, 725 F. App'x 736, 738 (11th Cir. 2018).

To support a retaliation claim under Title VII, the ADEA, and the Rehabilitation Act, Plaintiff must allege facts that plausibly suggest the Agency took materially adverse action against him for engaging in statutorily protected activity under Title VII, the ADEA, and the Rehabilitation Act.

It is unclear from Plaintiff's Complaint how the Agency retaliated against him. In his Response brief, Plaintiff argues that after he complained to the EEOC that he was being discriminated against, the Agency retaliated against him by not providing him with a reasonable accommodation.[125] But Plaintiff fails to provide any factual support for this allegation. As discussed above, the Agency provided Plaintiff with accommodations and was not required to provide Plaintiff the reasonable accommodation he desired.

## V.  Leave to Amend Complaint

The Eleventh Circuit Court of Appeals has instructed that "[w]hen a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action,"[126] unless it is clear that he can prove no set of facts in support of his claim that would entitle him to relief.[127] This Court cannot say Plaintiff can prove no facts which would entitle him to relief. Thus, given Plaintiff's *pro se* status, the Court will afford him an opportunity to

---

[125] Plaintiff's Response Brief [Doc. 24, pp. 17-18].

[126] *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015).

[127] *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291-92 (11th Cir. 2018).

amend his Complaint to state viable claims. Any amended complaint will take the place of and supersede Plaintiff's original complaint.[128]

### CONCLUSION

Based on the foregoing, the Agency's Motion to Dismiss [Doc. 19] is **GRANTED.** Plaintiff's claims under the USERRA are hereby **DISMISSED,** as this Court lacks jurisdiction to consider them. Because the Eleventh Circuit requires district courts to allow a plaintiff proceeding *pro se* an opportunity to amend his complaint unless it is clear that he can prove no facts in support of his claim that would entitle him to relief,[129] **Plaintiff is HEREBY PERMITTED** to file an amended complaint as to his race, age, and disability discrimination, hostile work environment, and retaliation claims within **twenty-one (21) days of the date of this Order**. Failure to timely file an amended complaint will result in dismissal of this action for the reasons stated herein.

**SO ORDERED**, this 28th day of March, 2025.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[128] *See Schreane v. Middlebrooks*, 522 F. App'x 845, 847-48 (11th Cir. 2013).
[129] *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291-92 (11th Cir. 2018).